UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | No. 3:18-cr-0022-9(VLB) |
| **MARQUIS PARKER** | : | |
| Defendant. | : | May 6, 2021 |

## MEMORANDUM OF DECISION DENYING DEFENDANT MARQUIS PARKER'S MOTION FOR A REDUCTION OF SENTENCE, DKTS. 976, 984

**Before the Court is Defendant Marquis Parker's motion for a modification of his sentence to provide for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). [Dkt. 984]. Defendant seeks a modification of his sentence from incarceration to home confinement based on his asserted risk of severe complications should he contract COVID-19 while incarcerated at USP Canaan. [*Id*.]. The Government opposes Defendant's motion. [Dkt. 979]. For reasons set forth below, the Court DENIES Defendant's motion.**

## Background

Mr. Parker was one of nineteen defendants arrested following an FBI investigation into a crack cocaine trafficking operation in a residential area in New Haven, Connecticut. [Dkt. 943 (Pre-Sentence Investigation Report) ¶¶ 7-

1

32](hereinafter PSR).[1] Mr. Parker pled guilty to one count of Conspiracy to Distribute, and to Possess with Intent to Distribute, cocaine base, in violation of 21 U.S.C. §§ 846, 841(a) and (b)(1)(B). [Dkt. 457 (Order adopting Findings and Recommendations of Magistrate Judge Richardson on plea)]; [Dkt. 622 (Crim. J)]. Mr. Parker purchased cocaine base from the conspiracy's lead defendant in redistribution quantities. *See* [PSR ¶ 32]. Mr. Parker's unlawful activities in furtherance of the conspiracy resulted in an attributed drug quantity guideline calculation of at least 28, but less than 112 grams of cocaine base. [PSR ¶¶ 39, 107]. A conviction for a violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, carries a maximum penalty of 40 years of imprisonment, subject to a mandatory minimum term of five years of imprisonment, a period of supervised release of at least four years and up to life, a fine of up to five million dollars, and a special assessment of $100.

After the plea agreement was reached, Mr. Parker pled guilty to a 2015 state robbery charge, which categorically constituted a violent felony under the Career Offender Guideline, U.S.S.G. § 4B1.1. [PSR ¶¶ 45, 59]. Consequently, Mr. Parker faced a guideline range of 188-210 months of imprisonment. [*Id.*]. Absent the applicability of the Career Offender Guideline, his guideline range was 57-71 months of imprisonment. In addition to his 2015 state robbery (1st degree) conviction, Mr. Parker has prior convictions for burglary and robbery (2nd degree),

---

[1] At sentencing, the Court confirmed that Defendant was interviewed by the probation officer in the presence of his counsel and read the PSR. Neither party objected to the facts as presented in the PSR and the Court adopted the PSR as its finding of fact. [Dkt. 687 (Sent. Hr'g Tr.) at 4:01-5:03].

possession of narcotics, escape (1st degree), and disorderly conduct. [PSR ¶¶ 52-57].

At sentencing, the Court addressed, *inter alia*, the need to protect the public and to deter Mr. Parker from future criminal conduct. [Dkt. 687 (Sent. Hr'g Tr.) at 08:01-13, 13:24-14:09, 17:15-17:18]. The Court found, that while the deprivation Mr. Parker experienced as a child explained his conduct, he "repeatedly threatened the use of deadly force against others, and he has posed a significant threat. And, in fact, harmed the public through his active, extensive, and rife distribution of drugs." [*Id.* at 08:03-08:13]. The Court was also concerned about the failure of counsel in the state court proceeding to appreciate the effect of the timing of Mr. Parker's guilty plea in the 2015 state robbery case on his federal sentencing guideline range. [*Id.* at 18:02-18:09]

Taking all of the 18 U.S.C. § 3553(a) sentencing factors into account, the Court departed downward and sentenced Mr. Parker to 60 months imprisonment to be followed by four years of supervised release. [Dkt. 591 (Sent. Tr.) 38:17-39:08]; [Dkt. 499 (Crim. J)].

A review of the Bureau of Prison's ("BOP") Inmate Locator confirms that Mr. Parker is designated to USP Canaan. *See Inmate Locator Service, BOP Registration no.* 25732-014 Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last reviewed May 6, 2021). His current release date is May 12, 2022. *Id.*

On December 10, 2020, Warden E. Bradley denied Mr. Parker's request that the BOP file a motion for compassionate release on his behalf. [Dkt. 984-2 Def. Am.

3

Mot. for Sent. Reduction, Ex. B]. The Court granted Mr. Parker's request for re-appointment of Attorney Bruce D. Koffsky to represent him in connection with his request for compassionate release. [Dkt. 968].

Mr. Parker argues that he is especially vulnerable to severe complications or death if he contracts COVID-19 because he is asthmatic. [Def. Am. Mem. in Supp. at 7-8]. Mr. Parker also argues that the BOP's response to the COVID-19 pandemic necessitated harsh lockdown measures that made his sentence more punitive than necessary to justly punish his offense conduct. [*Id.* at 8-9]. Mr. Parker has remained discipline free while in BOP custody. [Dkt. 984-3, Def. Ex. 3 (BOP Disciplinary Hist.)]. Mr. Parker proposes to reside with his mother, subject to conditions of home confinement, and his partner agrees to serve as a third-party custodian. [Am. Mem. in Supp. at 11-12].

In opposition, the Government argues that Mr. Parker fails to establish that "extraordinary and compelling" reasons exist to reduce his sentence because he does not present a health condition that places him at a medically recognized risk of severe complications from COVID-19. [Dkt. 979 (Gov. Mem. in Opp'n) at 13-16]. Specifically, the Government argues that under the CDC guidance, "moderate to severe" asthma *might* increase a patient's risk of complications and the singular medical record filed does not establish that his asthma is "moderate to severe." [*Id.*]. Further, the Government argues that Mr. Parker has engaged in criminal activity his entire adult life and the Court's reasoning for imposing the mandatory minimum sentence remains valid under the circumstances. [*Id.* at 16-17].

4

## Legal Standard

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed'; but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citations omitted) (quoting 18 U.S.C. § 3582(c)). The statute providing for the finality of a criminal judgment contains a narrow exception to provide for re-sentencing for compassionate release. 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Addressing the specific provision under which Defendant seeks relief from his sentence, the First Step Act of 2018 amended the procedural requirements for bringing a motion for resentencing to provide compassionate release. First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)). Previously, only the Bureau of Prisons ("BOP") could move for compassionate release and such motions were rarely filed. *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020). The First Step Act amendments were intended to address past inaction by the BOP by removing it as the sole arbiter of

5

compassionate release, while still permitting the BOP to weigh-in on a defendant's request via the statute's exhaustion of administrative remedies requirement. *See id.* at 232; *see also United States v. Gamble*, No. 3:18-CR-0022-4(VLB), 2020 WL 1955338, at *3 (D. Conn. Apr. 23, 2020)(explaining the policy purpose behind the exhaustion requirement in this context).

In *Brooker*, the Second Circuit held that since the BOP no longer has exclusive authority to bring a motion for compassionate release, district courts have the discretion to determine what constitutes "extraordinary and compelling" reasons outside of the outdated U.S. Sentencing Commission policy statements when the defendant moves for compassionate release. 976 F. 3d at 234-36. In short, the statute only requires courts to consider "applicable" statements issued by the U.S. Sentencing Commission and the relevant policy statement, U.S.S.G. § 1B1.13, is no longer "applicable" because the policy statement refers exclusively to a motion brought by the Director of the BOP. *Id.* at 235-36. In other words, "[w]hen the BOP fails to act, Congress made the courts the decision maker as to compassionate release." *Id.* at 236. Therefore, courts may consider "…the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and not just those delineated by the U.S. Sentencing Commission's policy statement. *Id.* at 237.

Consequently, the Court may grant a Defendant's motion for compassionate release if: (1) the Defendant has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) the Court finds

6

that, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

The defendant bears the burden of proving that he is entitled to a sentence reduction. *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020). The district courts have broad discretion in deciding whether to grant or deny a motion for compassionate release. *United States v. Gileno*, 448 F. Supp. 3d 183, 186 (D. Conn. 2020); *see also* § 3582(c)(1)(A) ("[T]he court…*may* reduce the term of imprisonment...")(emphasis added).

## Discussion

I. **Exhaustion of administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A)**

18 U.S.C. § 3582(c)(1)(A) requires that a defendant must first seek administrative relief, and then may proceed to court after fully exhausting administrative appeals or the lapse of thirty days from the warden's receipt of the request, whichever is earlier. Here, the Court agrees with the parties that Mr. Parker satisfied the administrative exhaustion requirement because over thirty days passed between the warden's decision on his administrative request and the filing of his motion seeking judicial relief. [Dkt. 984-2 (Dec. 10, 2020 denial of inmate request)]. Therefore, Mr. Parker's motion is properly before the Court, but it fails on the merits.

II. **Whether Defendant has demonstrated "extraordinary and compelling reasons"**

As to what constitutes "extraordinary and compelling" reasons, this Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their specific medical history may constitute "extraordinary and compelling" reasons to grant compassionate release, often in combination with other factors. *See, e.g. United States v. Jepsen*, 451 F. Supp. 3d 242, 245-47 (D. Conn. 2020) (granting motion for compassionate release where defendant suffers from a compromised immune system and defendant had less than eight weeks remaining on sentence); *United States v. Miller*, No. 3:15-CR-132-2 (VLB), 2020 WL 3187348, at *5 (D. Conn. June 15, 2020)(granting motion for compassionate release for severely ill defendant with less than three months remaining on sentence). However, "…the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)

In determining whether a defendant's vulnerability to the virus constitutes "extraordinary and compelling" reasons for re-sentencing, courts have undertaken factually intensive inquiries considering: defendants' age, the severity and documented history of their health conditions, defendants' history of managing those conditions in prison, the proliferation and status of infection at defendants' facilities, and the proportion of the term of incarceration that has been served. *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020)(citations omitted). Courts considering defendants' medical

8

vulnerability from COVID-19 ordinarily look to the CDC's guidance on at-risk health populations. *See United States v. Rivera*, No. 3:13-CR-71-1 (VLB), 2020 WL 3186539, at *4-5 (D. Conn. June 15, 2020); *see also, e.g., United States v. Adams*, No. 3:16-CR-86-VLB, 2020 WL 3026458, at *2 (D. Conn. June 4, 2020); *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020).

For the last several months, the CDC classified underlying health conditions that correlate to an increased risk of severe complications from contracting COVID-19 into two categories: conditions that are known to cause an increased risk of severe illness and those that might increase a person's risk. *People with certain medical conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Apr. 29, 2021). The conditions listed are regularly updated as the CDC reviews new scientific research. *Id*.

The risk classification for asthma appears to have changed recently. The CDC now considers "chronic lung diseases, including COPD (chronic obstructive pulmonary disease), asthma (moderate-to-severe), interstitial lung disease, cystic fibrosis, and pulmonary hypertension" as conditions that "can make you more likely to get severely ill from COVID-19." [*Id*.]. In the table of supporting evidence linked to the CDC's updated conditions list, the CDC indicates that its conclusions about asthma are "supported by mixed evidence." *See Science Brief: Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/science/science-

briefs/underlying-evidence-table.html (last updated Mar. 29, 2021). Nevertheless, moderate to severe asthma appears to be a more definite risk factor for severe illness from COVID-19 than recognized by the CDC previously. *Compare to United States v. Gregor*, No. 3:19-CR-64-11 (VLB), 2021 WL 917117, at *2 (D. Conn. Mar. 10, 2021)(quoting CDC guidance stating that patients with moderate to severe asthma "might be at an increased risk for severe illness from COVID-19.").

The Court agrees with the Government that Mr. Parker's medical records do not establish that he has a medically recognized risk of severe illness from COVID-19. The two records dated from October 2019 confirm that he is diagnosed with asthma and he was prescribed an inhaler, but they do not reference the acuity of the condition and Mr. Parker refused further evaluation. [Dkt. 990-1, Sealed Med. R (Oct. 9, 2019 Clinical Encounter note)]. Although he has a right to refuse further assessment, Mr. Parker's refusal suggests that he is not particularly concerned about the condition or its acuity. *Id.* ("Patient refuses physical exam, was advised this is a poor decision and could lead to worsening of his condition, serious illness, or death but Patient continues to refuse, signs refusal form and states he understands the risks including death."). The only other medical record indicates that Mr. Parker has not used an inhaler since age 12, again suggesting that his asthma is mild and episodic. [Sealed Med. R. (Oct. 30, 2019 Clinical Encounter Note)]. Additionally, during his presentence investigation interview, Mr. Parker disclosed that he had childhood asthma, but it no longer affected him. [PSR ¶ 76]. He reported no other medical conditions. [*Id.*].

10

The Court's Standing Order in Motions for Modification of an Imposed Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in relation to the COVID-19 pandemic requires defendants seeking compassionate release to file medical records for the last six months. *See* [Dkt. 814 (Standing Order) at § 3(d)]. The scant medical records filed show that Mr. Parker has made a "poor decision" to forgo a physical examination for an apparent asthma exacerbation and that he received medical treatment. They do not show that his health is particularly debilitated, whether he has been tested for COVID-19, or whether he has been offered or otherwise provided access to a COVID-19 vaccine. The Court notes that the BOP now reports that it has administered over 160,000 doses of the vaccine to inmate and staff, including to 842 inmates at USP Canaan who are now fully inoculated. *COVID-19 Dashboard*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated May 6, 2021).

Mr. Parker is only 28 years old, placing him in an age group with a relatively lower risk of severe illness than faced by older adults. *Older Adults*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Apr. 16, 2021). According to the CDC, 0.5% of all COVID-19 deaths were among individuals age 18-29. *Demographic Trends of COVID-19 cases and deaths in the US reported to CDC*, Ctrs. for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#demographics (last updated May 6, 2021).

This Court and others have declined to find that "extraordinary and compelling" reasons exist when a defendant is mildly asthmatic and comparatively

11

young. *See, e.g. United States v. Torres*, No. 3:16-CR-00114 (VAB), 2021 WL 837436, at *4-5 (D. Conn. Mar. 5, 2021)(denying compassionate release for asthmatic inmate); *United States v. Henderson*, No. 3:19-CR-30 (VLB), 2020 WL 7321403, at *5-6 (D. Conn. Dec. 11, 2020)(denying motion for compassionate release brought by inmate with a BMI of approximately 32 (as calculated by the parties) and "well controlled asthma" in part because the inmate was only 26 years old); *United States v. Newton,* No. 3:18-cr-0022-8 (VLB), 2020 WL 6784267, at *6 (D. Conn. Nov. 18, 2020) ("[T]he Court agrees with Warden Easter that Mr. Newton's obesity and controlled asthma does not establish[ ] 'extraordinary and compelling reasons' for his release, particularly in view of the comprehensive health care that he is receiving, his age, and the state of the virus at [his facility].").

Mr. Parker also argues that "USP Canaan has been hit particularly hard by the virus." [Def. Am. Mem. in Supp. at 8]. This is partially borne out by BOP statistics. USP Canaan is a high security prison with an adjacent minimum-security satellite camp, together housing 1,231 inmates. *USP Canaan*, Bureau of Prisons, https://www.bop.gov/locations/institutions/caa/ (last reviewed May 6, 2021). 297 inmates recovered from the virus, there have been no deaths, and there are one currently active case among inmates. *COVID-19 Dashboard*, Bureau of Prisons.[2] At this juncture, conditions at USP Canaan do not militate in favor of finding

---

[2] **In comparison, about a third of all BOP inmates contracted the virus and most have recovered.** *Id*. By further comparison, over 9.6% of Connecticut's population contracted the virus. *Coronavirus Disease 2019 (COVID-19)*, Conn. Dep't. of Pub. Health https://portal.ct.gov/coronavirus, (last updated on May 6, 2021); *Quick Facts: Connecticut*, U.S. Census Bureau, https://www.census.gov/quickfacts/CT (pop. est. Jul. 1, 2020).

12

"extraordinary and compelling" reasons to modify his sentence because his current risk of exposure appears low.

Finally, the Court considers Mr. Parker's argument that his custodial sentence has been harsh because of the lockdowns and other restrictions necessary to prevent contagion among inmates and staff. [Def. Am. Mem. in Supp. at 8-9]. The Court is sympathetic to Mr. Parker's argument and he is undeniably correct. Prisoners will continue to experience deprivation, isolation, and limited access to rehabilitative programs until the pandemic grinds to an end. But he has not experienced hardship different than other inmates in BOP custody. *See United States v. Johnson*, No. 98-CR-860(7) (ARR), 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021)(declining to find extraordinary and compelling reasons for sentence modification based on generalized claim of harsh conditions of confinement attendant to the pandemic). Whether prison conditions attendant to the pandemic generally should be factored in the computation of federal sentences is an issue best left to the BOP, the President, and Congress.

To his credit, Mr. Parker also remains discipline free. Indeed, the BOP has rewarded him with good-time credit. The Court is optimistic that this is a sign that Mr. Parker is maturing and may now genuinely accept responsibility for his actions and move forward. However, by statute, "[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

Consequently, the Court finds that Mr. Parker fails to carry his burden of establishing that extraordinary and compelling reasons exist to modify his

sentence. In sum, Mr. Parker has not established that his asthma is of the acuity that is medically recognized to elevate an individual's risk of severe illness from COVID-19. He is young and there is only one active case at his place of confinement, meaning that prison officials have demonstrated their ability to prevent an outbreak there. Mr. Parker will likely have access to a vaccine soon if he has not already. Finally, while conditions of confinement attendant to the pandemic are undoubtedly difficult and he has remained discipline-free, it does not warrant finding that "extraordinary and compelling" reasons exist to disrupt the finality of a criminal judgment.

### III. Consideration of the 18 U.S.C. § 3553(a) sentencing factors

Even if the Court were to find that "extraordinary and compelling" reasons exist, consideration of the 18 U.S.C. § 3553(a) sentencing factors would not warrant resentencing. In imposing a sentence, that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing, the Court must consider, *inter alia*,

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 
> (2) the need for the sentence imposed—
> 
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> 
>> (B) to afford adequate deterrence to criminal conduct;
>> 
>> (C) to protect the public from further crimes of the defendant; and
>> 
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

§ 3553(a)(1)-(2)

It is "entirely within the district court's discretion to consider how much time an inmate has already served of his overall sentence when the court is weighing whether a release for extraordinary and compelling circumstances is consistent with the Section 3553(a) factors, such as the need for deterrence and the danger posed to the community by the inmate's release." *United States v. Butler*, No. 20-1379-CR, 2021 WL 1166001, at *2 (2d Cir. Mar. 29, 2021)(citation omitted).

The Court faced a difficult predicament at sentencing. Mr. Parker was then, and remains now, a young man with a troubled past and a worrisome criminal history. Because of that criminal history and the inartful timing of the disposition of the unrelated robbery charge, Mr. Parker faced a guideline range of 188-210 months imprisonment. His criminal history included prior convictions for serious and violent felonies, implicating the brandishing of firearms on multiple occasions. Mr. Parker was undeterred by prior prison sentences and has a prior conviction for escaping custody, raising serious concerns about his suitability for release into the community without careful planning.

As is the case now, Mr. Parker's offense conduct did not warrant the 15-year plus sentence contemplated by the advisory sentencing guidelines. However, the mandatory minimum sentence remains both necessary and sufficient to achieve the purposes of sentencing. Mr. Parker has been in federal custody since February 6, 2018. [PSR at 1]. He has served about 55% of his statutory sentence. With good time credits, Mr. Parker is scheduled to be released on May 12, 2022. Given the lenient sentence imposed, a sentence of time served risks exacerbating sentencing

disparities and would not adequately deter Mr. Parker from resuming criminal behavior or protect the public. In short, the Court cannot conclude that the remaining sentence to be served would be futile.

## Conclusion

For the reasons stated above, the Court DENIES Defendant's Motion for a Reduction of his Sentence.

IT IS SO ORDERED.

\_\_\_\_\_/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated this day in Hartford, Connecticut: May 6, 2021